UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL M. KOORNDYK, JR.,

        Plaintiff,

Case No. 1:04-CV-333

Hon. Hugh W. Brenneman, Jr.

vs.

MIDWAY MOTOR SALES, INC.,
MODERN BUILDERS SUPPLY, INC.,
GENERAL MOTORS ACCEPTANCE
CORPORATION, and MICHAEL JOSEPH
MERCURE,

        Defendants.
_____/

**OPINION**

This matter is now before the court on motions to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(6) filed by three defendants: Modern Builders Supply, Inc. ("MBS") (docket no. 58), General Motors Acceptance Corporation ("GMAC") (docket no. 62), and Michael James Mercure ("Mercure") (docket no. 64).

**I.     Legal standard**

Under Rule 12(b)(6), a complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The court must accept the facts set forth in the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 762 (6th Cir. 2005). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

>    II.     **Failure to properly plead allegations of fraud pursuant to Fed. Rules Civ. Proc. 9(b).**

Plaintiff alleges five counts based upon the violation of one federal statute and four state statutes:

> Count I.  The Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 *et seq.* (commonly known as the Federal Odometer Act);

> Count II.  The Ohio Odometer Rollback and Disclosure Act, O.R.C. § 4549.41 *et seq.* (commonly known as the Ohio Odometer Act);

> Count III.  The Ohio Consumer Protection Act, O.R.C. § 1345.01 *et seq.*;

> Count IV.  The Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq.*; and

> Count V.  The Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.45.

Defendants MBS, GMAC and Mercure seek dismissal of plaintiff's First Amended Complaint for failure to plead the allegations of fraud with particularity pursuant to Fed. Rules Civ. Proc. 9(b). As an initial matter, it is unclear whether defendants seek to dismiss only plaintiff's Federal Odometer Act claim or all of his claims. One purpose of the Federal Odometer Act is "to prohibit tampering with motor vehicle odometers." 49 U.S.C. § 32701(b). A private person may bring an action to enforce a claim under the Act. 49 U.S.C. § 32710(b). A person that violates the Federal Odometer Act, "with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a). The plain and ordinary meaning of the phrase "intent to defraud" envisions misconduct more invidious than mere negligence. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807-08 (7th Cir. 1988) (construing predecessor statute). *See also Ioffe*

*v. Skokie Motor Sales, Inc.*, -- F.3d --, 2005 WL 1592955 at *5 (7th Cir. 2005) ("In enacting the [Federal] Odometer Act, Congress created a private right to sue a transferor for failure to disclose 'the cumulative mileage registered on the odometer,' 'with intent to defraud' . . . In other words, it created a private claim for odometer or mileage fraud"). All of plaintiff's claims arise from alleged acts related to "odometer or mileage fraud." Accordingly, the court will view the motions as seeking dismissal of all claims asserted by plaintiff.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice intent, knowledge, and other condition of mind of a person may be averred generally." To comply with the requirements of Rule 9(b), a plaintiff must allege the time, place, and content of the alleged misrepresentation upon which he relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

> Compliance with Rule 9(b) should be reviewed as to each of the elements of the claim of fraud in a complaint and as to each of the named defendants because each defendant must be informed of the specific nature of his alleged participation in allegedly defrauding a plaintiff. The pleading must be sufficiently particular to serve the three goals of Rule 9(b) which are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits and fishing expeditions.

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101, 1114 (W.D. Mich. 1996) (citations omitted). In sum, "[t]he purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations

3

of fraud." *Advocacy Organization v. Auto Club Insurance Association*, 176 F.3d 315, 322 (6th Cir. 1999).

Plaintiff's First Amended Complaint includes 39 paragraphs alleging "Facts" and "Defendants' Practices and Policies." In this pleading, plaintiff has alleged a detailed history of the vehicle at issue, a 2000 GMC Sierra K-1500 pickup truck (VIN 1GTEK19T19T1YE332532). First Amend. Compl. at ¶ 8. The history commences on or about April 12, 2000, when MBS leased the vehicle as "new" from former defendant Midway Motor Sales, Inc. ("Midway"), for a term of two years and 30,000 miles. *Id.* The title listed GMAC as the lessor and MBS as the lessee. *Id.* The truck's odometer reading was 312 miles at the time of this lease transaction. *Id.* On May 31, 2001, MBS serviced the truck at a dealership in Lima, Ohio. *Id.* at ¶ 9. General Motors Corporation records indicate an odometer reading of 29,827 miles at this time. *Id.*

During the second year of the lease, the truck was assigned to an MBS salesman, Mike Gantz. *Id.* at ¶ 10. On April 2, 2002, Mr. Gantz had the truck serviced at a Valvoline Instant Oil Change shop in Ohio, at which time the odometer reading was 53,246 miles. *Id.* at ¶ 11. On or about April 12, 2002, an employee or agent of Midway provided Mr. Gantz with a new business vehicle and left with the truck. *Id.* at ¶ 12. At that time, the odometer reading was more than 53,000 miles. *Id.* In or about May 2002, GMAC sold the truck at auction to Sparta Chevrolet of Sparta, MI, at which time the odometer reading was 33,212 miles. *Id.* at ¶ 13.

Plaintiff alleges that sometime after Midway took possession of the truck in April 2002, and before GMAC sold the truck at auction to Sparta Chevrolet in May 2002, "Mr. Mercure and/or MBS and/or their agents or employees, altered the [t]ruck's odometer, rolling the odometer back by approximately 20,000 miles." *Id.* at ¶ 14. In addition, "[n]either Midway, Mr. Mercure,

4

MBS, GMAC, nor anyone else disclosed to Sparta Chevrolet, or to any other subsequent purchaser at the time of purchase, that the [t]ruck's odometer had been altered and rolled back approximately 20,000 miles." *Id.* at ¶ 15. Plaintiff alleges that these four defendants "and/or their employees and/or agents": (1) "knowingly executed false or incomplete odometer disclosure statements regarding the [t]ruck" and (2) "recklessly executed false or incomplete odometer disclosure statements regarding the [t]ruck." *Id.* at ¶¶ 16-17. Then, on May 14, 2002, the State of Michigan issued a title to the truck naming Sparta Chevrolet as the owner. *Id.* at ¶ 18. The title recited an odometer reading of 33,212 miles when the application for title was made naming Sparta Chevrolet. *Id.* at ¶ 18.

On July 11, 2003, Sparta Chevrolet transferred ownership of the truck to AAA Auto Sales of Grand Rapids, Inc. ("AAA"), at which time the title indicated an odometer reading of 36,520 miles. *Id.* at ¶ 19. Plaintiff purchased the truck from AAA on July 14, 2003, for a total cash price of $21,014.50. *Id.* at ¶ 20. At that time, the odometer reading was approximately 36,633 miles. *Id.* Plaintiff had the truck serviced on August 16, 2003 at a Valvoline Instant Oil Change Shop in Michigan. *Id.* at ¶ 21. At that time, the truck had an odometer reading of 38,685 miles. *Id.* When Valvoline's national database indicated that a person named Mike Gantz had previously serviced the truck on April 2, 2002, and that at the time of the service the odometer reading was 52,246 miles. *Id.* Plaintiff communicated with Mr. Gantz, and he confirmed that there were more than 53,000 miles on the truck's odometer when the MBS lease expired in April 2002, that Midway performed routine maintenance on the truck and that the truck's true mileage would be reflected in Midway's service records. *Id.* at ¶ 22.

Plaintiff further alleges that GMAC identified evidence of odometer tampering by defendants Midway, Mercure, MBS "and/or their employees and/or agents" on at least 66 vehicles

5

later sold by GMAC at auction to various dealers. *Id.* at ¶¶ 23-25.  In or about April 2004, GMAC's Plano, Texas, office sent letters to each purchaser of the 66 vehicles advising the recipient that "the odometer for the vehicle does not reflect the actual mileage," and that there was an "odometer discrepancy." *Id.* at ¶ 25.  GMAC offered to pay each such owner payment in the amount of ten cents per mile as compensation for the "odometer discrepancy." *Id.* at ¶ 26.  If the owner accepted the offer, then the owner was required to sign a Letter Agreement disclosing that the odometer reading was not accurate and releasing claims against defendants GMAC, Mercure, Midway, Modern Builders and others.  *Id.*

Plaintiff received such a letter.  *Id.* at ¶ 25. After receiving his letter, plaintiff contacted GMAC and spoke with a GMAC representative, Mr. Galvin, who advised plaintiff that his vehicle had an approximate "18,000 mile odometer discrepancy" and that GMAC would compensate plaintiff approximately $1,800 for the discrepancy. *Id.* at ¶ 28.  "Mr. Galvin made no mention of odometer fraud, tampering or other wrongdoing." *Id.*  When plaintiff declined the offer, GMAC offered to repurchase the truck by paying off the his loan balance and refunding all payments made to date via a letter dated May 6, 2004.  *Id.* at ¶ 29.   Plaintiff further alleged that he suffered actual and substantial damage as a result of "defendants' odometer roll-back scheme." *Id.* at ¶ 37.

Plaintiff also alleged the following acts by defendants:

39. MBS has had an ongoing and mutually beneficial relationship with Midway, over the years leasing perhaps more than one hundred motor vehicles through Midway.

40. MBS and its employees frequently have driven the leased vehicles for more miles than allowed under the lease agreements.

41. Upon information and belief, Midway, Mr. Mercure, MBS and/or their employees or agents, have altered the odometers of nearly one hundred vehicles, by rolling back the odometers, often by tens of thousands of miles.

42. The odometer roll-backs have benefitted MBS because MBS has not had to pay for the excess mileage.

43. The odometer roll-backs have benefitted Midway and Mr. Mercure because Midway and Mr. Mercure have been able to keep MBS as a high-volume customer, leasing hundreds of vehicles to MBS.

44. GMAC has benefitted by instructing its dealerships not to properly complete odometer disclosure documents, thereby turning a blind-eye to the records that would alert GMAC to the odometer roll-backs, and thereby allowing GMAC to sell the vehicles at auction for inflated prices because of the altered mileage.

45. Midway, Mr. Mercure and MBS intended to violate the federal and state odometer acts. Midway, Mr. Mercure and MBS conspired to violate the Federal and Ohio Odometer Acts.

46. At a minimum, GMAC recklessly violated the Ohio Odometer Act.

\*   \*   \*

47. Defendants have participated in a scheme, whereby they altered odometers on nearly one hundred motor vehicles, rolling back the odometers by thousands of miles, executing false or incomplete odometer disclosure statements, and selling the vehicles at auction to unwitting buyers.

48. Defendants later participated in a second scheme, orchestrated and conducted in large part by GMAC, whereby GMAC committed unconscionable and deceptive acts to induce the owners of the vehicles with tampered odometers to sign agreements purporting to settle their claims for a few pennies on the dollar and release GMAC, Midway, Mr. Mercure, MBS and other [sic] from all liability in connection with the odometer roll backs.

First Amend. Compl.

After reviewing these allegations, the court concludes that plaintiff's First Amended Complaint has adequately informed defendants GMAC, Modern Builders and Mercure of the

allegations against them for purposes of Fed. Rules Civ. Proc. 9(b). While plaintiff has not identified the specific person that performed the alleged tampering, he has narrowed the culpable parties to MBS, GMAC and Mercure, all of whom had an ownership interest in, physical possession of, or control over the truck when the odometer tampering occurred, i.e., between the expiration of the MBS lease in April 2002 and GMAC's sale to Sparta Chevrolet in May 2002. These allegations are sufficiently particular to serve the three goals of Rule 9(b). *See Picard Chemical Inc.*, 940 F.Supp. at 1114. First, plaintiff's allegations provide defendants with fair notice of the claims against them. Second, the allegations are of sufficient specificity as to protect defendants from harm to their reputation or goodwill by unfounded allegations of fraud. Plaintiff has alleged numerous facts to support a claim of odometer tampering. Third, plaintiff's allegations do not suggest that he is engaged in a "fishing expedition" against defendants. Plaintiff has narrowed down his allegations to the parties that had actual possession of the truck and/or who were in a position of authority to execute the documentation attesting to the truck's odometer reading.

    Defendants contend that plaintiff's allegations group all defendants into one category and fails to make separate and specific allegations against each defendant. The court disagrees with defendants' contention. Plaintiff has identified the role of each defendant in the alleged scheme to alter the truck's odometer. While plaintiff has not specified the person who physically altered the odometer, this information may not be known until plaintiff conducts discovery. Based on the allegations as set forth in this case, the court concludes that plaintiff's failure to include separate allegations of fraud against each defendant is not fatal. *See City of Painesville, Ohio v. First Montauk Financial Corp.*, 178 F.R.D. 180, 187 (N.D. Ohio 1998) (observing that "the victims of

fraud are often unable to detail their allegations until they have had some opportunity to conduct discovery of those parties reasonably suspected of having perpetrated a fraud").

Defendants have received fair notice of the claims so as to allow them "to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Organization*, 176 F.3d at 322.[1] Accordingly, defendants' motions to dismiss (docket nos. 58, 62 and 64) will be denied with prejudice insofar as the motions seek dismissal of plaintiff's claims pursuant to Rule 9(b).

### III. Motions to dismiss claims brought under Ohio and Texas state law

Next, defendants ask that the court dismiss certain state law claims set forth in the First Amended Complaint. MBS contends that plaintiff has failed to set forth specific allegations with respect to the Texas Deceptive Trade Practices Act and seeks dismissal of that claim. Defendant GMAC states that plaintiff, as a Michigan resident, has no standing to bring out of state claims against it, and seeks dismissal of the claims brought pursuant to the Ohio statutes (counts II-IV) and the claim brought pursuant to the Texas statute (count V). Defendant Mercure repeats GMAC's contention that plaintiff has no standing to bring claims under the Ohio and Texas statutes.

Defendants' arguments with respect to dismissal of the state law claims consist of nothing more than bald assertions that plaintiff lacks standing to sue under Ohio and Texas law. None of the defendants discuss the substance of the state statutes or how they apply (or do not apply)

---

[1] The court notes that defendants appear to have a comprehensive understanding of plaintiff's allegations as demonstrated by responses and briefs filed in opposition to plaintiff's motion to certify class (docket no. 17) and motion for a protective order (docket no. 20). For example, in GMAC's memorandum in opposition to plaintiff's motion for a protective order, GMAC sets forth a lengthy recitation of facts under the headings: "Midway's Odometer Rollback Scheme," "GMAC Responds Quickly With A Remediation Plan," "GMAC Identifies 81 Affected Vehicles With 68 Affected Owners," "The Remediation Efforts of GMAC," "Customers' Responses To GMAC's Settlement Offers," and "Current Status Of The Affected Vehicles." *See* docket no. 31. MBS concurred with the factual and legal grounds as set forth by GMAC. *See* docket no. 27.

to plaintiff's claims. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Accordingly, the court will deny defendants' motions to dismiss the Ohio and Texas state law claims as inadequately briefed. Each defendant may, however, file properly briefed motions for dismissal or for summary judgment on the Ohio and Texas state law claims at a later date.[2]

---

[2] The case management order provides that the parties may file dispositive motions by November 6, 2005.

### IV. Conclusion

Plaintiff has alleged the existence of fraudulent conduct sufficient to meet the requirements of Rule 9(b). Accordingly, defendants' motions to dismiss (docket nos. 58, 62 and 64) will be **DENIED with prejudice** insofar as they seek dismissal of the First Amended Complaint for failure to comply with Rule 9(b).

Defendants have not adequately briefed their motions to dismiss plaintiff's claims brought pursuant to the Ohio and Texas state law. Accordingly, defendants' motions to dismiss (docket nos. 58, 62 and 64) will be **DENIED without prejudice** insofar as they seek dismissal of the state law claims asserted in Counts II, III, IV and V.

An order consistent with this opinion shall be issued forthwith.


Dated: July 28, 2005                             /s/ Hugh W. Brenneman, Jr.
                                                 Hugh W. Brenneman, Jr.
                                                 United States Magistrate Judge