UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL M. KOORNDYK, JR.,

             Plaintiff,

vs.

MIDWAY MOTOR SALES, INC.,
et al.,

             Defendants.

_____/

Case No. 1:04-CV-333

Hon. Hugh W. Brenneman, Jr.

**OPINION**

This matter is now before the court on defendant General Motors Acceptance Corporation's (GMAC's) motion for summary judgment (docket no. 129) and plaintiff's motion for partial summary judgment (docket no. 132).

**I.      Introduction**

This case involves a scheme by which certain defendants allegedly altered the odometer on a truck purchased by plaintiff. Only two of the original defendants remain in this suit, GMAC and Michael Mercure. The motions at issue relate to plaintiff's claims asserted against defendant GMAC. GMAC does not contest that plaintiff was a victim of the defendant Midway Motor Sales' (Midway's) fraudulent odometer tampering, but points out that GMAC was a financial victim of this scheme itself.

In Count I of his first amended complaint, plaintiff seeks damages pursuant to the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 *et seq.* (commonly known as the Federal Odometer Act). In Count II, plaintiff seeks damages pursuant to the Ohio

Odometer Rollback and Disclosure Act, O.R.C. § 4549.41 *et seq.* (commonly known as the Ohio

Odometer Act).[1]  GMAC seeks summary judgment with respect to both Counts I and II.  Plaintiff

seeks partial summary judgment with respect to GMAC's liability under the Federal Odometer Act

as alleged in Count I.

## II.     Legal standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).   In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set

forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to
> support the nonmoving party's case.  Once the moving party has met its burden of
> production, the nonmoving party cannot rest on its pleadings, but must present
> significant probative evidence in support of the complaint to defeat the motion for
> summary judgment. The mere existence of a scintilla of evidence to support
> plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the

court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## III.     The Federal Odometer Act

Plaintiff filed suit pursuant to the Federal Odometer Act, which provides in pertinent

part that "[a] person that violates this chapter [49 U.S.C. §§ 32701 et seq.], or a regulation prescribed

---

[1]The court provided an in-depth discussion of plaintiff's claims in its previous opinions of March
29, 2005 and July 28, 2005.  *See* docket nos. 93 and 99.  Accordingly, the court will limit its discussion of
facts to those most pertinent to the present motions.

or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a). The two stated purposes of the Federal Odometer Act are "to prohibit tampering with motor vehicle odometers" and "to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b)(1)-(2). *See Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 713 (7th Cir. 2005) ("[b]y enacting the Odometer Act, Congress created a private right to sue a transferor for failure to disclose the cumulative mileage registered on the odometer, with intent to defraud") (internal quotations omitted).

In Count I, plaintiff alleged that GMAC violated three sections of the Federal Odometer Act, i.e., 49 U.S.C. §§ 32703, 32704 and 32705. However, plaintiff has alleged no facts to support his claim that GMAC either tampered with the odometer in violation of § 32703 or performed service on the odometer affecting the mileage shown on it in violation of § 32704. Rather, plaintiff's claims against GMAC are limited to GMAC's alleged failure to meet the mileage disclosure requirements on the transfer of a leased motor vehicle pursuant to § 32705 and 49 C.F.R. § 580.7.

Section 32705 provides the follow odometer disclosure requirements:

(a)     (1) Disclosure requirements.--Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:

(A) Disclosure of the cumulative mileage registered on the odometer.

(B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is

3

different from the number of miles the vehicle has actually traveled.

(2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

(3) A person acquiring a motor vehicle for resale may not accept a written disclosure under this section unless it is complete.

\*       \*       \*

(c) Leased motor vehicles.--

(1) For a leased motor vehicle, the regulations prescribed under subsection (a) of this section shall require written disclosure about mileage to be made by the lessee to the lessor when the lessor transfers ownership of that vehicle.

(2) Under those regulations, the lessor shall provide written notice to the lessee of--

(A) the lessee's mileage disclosure requirements under paragraph (1) of this subsection; and

(B) the penalties for failure to comply with those requirements.

(3) The lessor shall retain the disclosures made by a lessee under paragraph (1) of this subsection for at least 4 years following the date the lessor transfers the leased motor vehicle.

(4) If the lessor transfers ownership of a leased motor vehicle without obtaining possession of the vehicle, the lessor, in making the disclosure required by subsection (a) of this section, may indicate on the title the mileage disclosed by the lessee under paragraph (1) of this subsection unless the lessor has reason to believe that the disclosure by the lessee does not reflect the actual mileage of the vehicle.

49 U.S.C. § 32705.

4

Section 32705 incorporates 49 C.F.R. § 580.7, entitled "Disclosure of odometer information for leased motor vehicles," which provides as follows:

(a) Before executing any transfer of ownership document, each lessor of a leased motor vehicle shall notify the lessee in writing that the lessee is required to provide a written disclosure to the lessor regarding the mileage. This notice shall contain a reference to the federal law and shall state that failure to complete or providing false information may result in fines and/or imprisonment. Reference may also be made to applicable State law.

(b) In connection with the transfer of ownership of the leased motor vehicle, the lessee shall furnish to the lessor a written statement regarding the mileage of the vehicle. This statement must be signed by the lessee and, in addition to the information required by paragraph (a) of this section, shall contain the following information:

(1) The printed name of the person making the disclosure;

(2) The current odometer reading (not to include tenths of miles);

(3) The date of the statement;

(4) The lessee's name and current address;

(5) The lessor's name and current address;

(6) The identity of the vehicle, including its make, model, year, and body type, and its vehicle identification number;

(7) The date that the lessor notified the lessee of disclosure requirements;

(8) The date that the completed disclosure statement was received by the lessor; and

(9) The signature of the lessor.

(c) In addition to the information provided under paragraphs (a) and (b) of this section,

5

(1) The lessee shall certify that to the best of his knowledge the odometer reading reflects the actual mileage; or

(2) If the lessee knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, he shall include a statement to that effect; or

(3) If the lessee knows that the odometer reading differs from the mileage and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the odometer reading is not the actual mileage and should not be relied upon.

(d) If the lessor transfers the leased vehicle without obtaining possession of it, the lessor may indicate on the title the mileage disclosed by the lessee under paragraph (b) and (c) of this section, unless the lessor has reason to believe that the disclosure by the lessee does not reflect the actual mileage of the vehicle.

49 C.F.R. § 580.7.

### A.   GMAC notified the lessee pursuant to 49 C.F.R. § 580.7(a).

First, plaintiff contends that GMAC violated this regulation because GMAC (the lessor) did not notify MBS (the lessee) that MBS was required to provide a written mileage disclosure. *See* 49 C.F.R. § 580.7(a) ("[b]efore executing any transfer of ownership document, each lessor of a leased motor vehicle shall notify the lessee in writing that the lessee is required to provide a written disclosure to the lessor regarding the mileage"). In order to address plaintiff's claim, the court must review the method by which GMAC obtained the odometer disclosures from MBS.

In his first affidavit, Gerald E. Galvin, GMAC's Operations Manager, stated that:

7.   Odometer disclosures were completed by Midway in connection with the return of the vehicles to Midway at lease end. The odometer disclosure statements reflected the altered mileage as the correct mileage. These fraudulent odometer disclosure statements were subsequently submitted to GMAC. GMAC did not know that these odometer disclosure statements were fraudulent.

6

Galvin Aff. (undated) at ¶ 7, attached to GMAC's Brief.

        Mr. Galvin submitted a second affidavit to clarify how GMAC obtained the odometer disclosures. This affidavit provides in pertinent part as follows:

> 4.     [Midway] entered into GMAC's standard form "GMAC Lease Plan Dealer Agreement" ("Dealer Agreement"), which sets forth the terms and conditions under which GMAC acquires lease agreements that Midway enters into with Midway's customers, and then assigns to GMAC along with the underlying leased vehicle. A copy of Midway's Dealer Agreement is attached as Exhibit 1 to this Affidavit.

> 5.     Pursuant to Paragraph V of the Dealer Agreement, upon return of the vehicles, the dealer agrees to:

>> (1)     receive and inspect the vehicle
>> (2)     complete a vehicle condition report, supplied by GMAC, in the presence of the Lessee (in this case, a representative of MBS); and
>> (3)     obtain the Lessee's signature on the report acknowledging the condition of the Vehicle (Exhibit 1).

>> \*      \*      \*

> 7.     Midway, like all other dealerships from whom GMAC acquires leases under a Dealer Agreement, was contractually responsible for completing, in the presence of the lessee, a vehicle condition report that contains the odometer disclosure statement and obtaining the signature of the lessee acknowledging the vehicle's condition.

> 8.     In fulfilling its obligations under the Dealer Agreement, Midway does not act as GMAC's agent. Indeed, Paragraph VII(A) of the Dealer Agreement expressly and explicitly states that the dealer, here Midway, is not made an agent of GMAC. (Exhibit 1).

Galvin Second Aff. (2/21/06) (docket no. 151).

        The odometer reading at issue is set forth in the "GMAC Smartlease Condition Report and Odometer Statement -- Dealer Inspections" (the "vehicle condition report"). Here, the vehicle condition report for plaintiff's truck includes a section entitled "Odometer Disclosure

7

Statement," which provides as follows:

> Federal law (and State law, if applicable) requires that the lessee disclose the mileage to the lessor in connection with the transfer of ownership.  Failure to complete or making a false statement may result in fines and/or imprisonment.  Complete the disclosure form below and return it to the lessor.

> I, Modern Builders Supply state that the odometer now reads 33212 miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described above, unless one of the following statements is checked.  [None of "the following statements" are checked.]

Vehicle condition report attached as Exh. A to plaintiff's brief.

The vehicle condition report also includes a section entitled "TO BE COMPLETED BY GMAC CUSTOMER."  *Id.*    In this section, the customer affirms the following statement: "Signature acknowledges that the information is true and correct and the vehicle is being returned with original equipment and damage amounts are correct." *Id.* The "GMAC CUSTOMER" section is signed by a "customer" identified as "Stephen Lewis." *Id.*  Mr. Lewis did not date his signature. *Id.*  However, the vehicle condition report states that the vehicle was returned on April 10, 2002. *Id.*

In his second affidavit, Mr. Galvin identified Mr. Stephen Lewis as a representative of MBS:

> 9.     In 1999, GMAC established a commercial credit line for [MBS], and consistent with GMAC's policies and procedures, obtained a corporate resolution from MBS that identified the individual(s) authorized to sign documents on behalf of MBS.  GMAC obtained two corporate resolutions from MBS, which are attached as Exhibit 2 to this Affidavit.  Both of MBS' corporate resolutions authorized MBS employee Stephen Lewis ("Lewis") to sign and execute documents on behalf of MBS.   No other designated representative of MBS was identified.

> 10.    Based on these corporate resolutions, GMAC reasonably believed Lewis was the authorized representative of MBS, empowered to sign and execute lease-

related documents on behalf of MBS.  GMAC had no reason to believe otherwise.

11.    Lewis' name appears on all lease agreements with MBS entered with Midway, which Midway then assigned to GMAC with the underlying lease vehicle pursuant to its Dealer Agreement, and on the vehicle condition reports completed at lease-end.

Galvin Second Aff.

MBS enacted two corporate resolutions with respect to Mr. Lewis.  On November 15, 1999, MBS resolved that

> Stephen Lewis . . . are [sic] hereby severally authorized and directed to execute motor vehicle instalment sales agreements or leases that will be assigned to General Motors Acceptance Corporation or General Motors Corporation for, or on behalf of, and in the name of [ ] MODERN BUILDERS for the purchase or lease of motor vehicles by this Corporation as the purchaser or lessee, as the case may be, in any manner and on such terms as they or he may deem advisable.
>
> Be it further resolved that notwithstanding any change to or termination of the foregoing authority by operation of law or otherwise, any originator of such instalment sales agreements or leases and any assigns thereof shall be fully protected and held harmless in relying and acting upon said authorization until they shall have received written notice from the Corporation of any such change or termination.

*See* Certificate of Secretary as to Corporate Resolution (11/15/1999) attached to Galvin Second Aff. as Exh. 2. On April 16, 2002, MBS enacted an identical resolution authorizing Mr. Lewis to act on its behalf.  *See* Certificate of Secretary as to Corporate Resolution (4/16/2002) attached to Second Galvin Aff.[2]

---

[2] Plaintiff's response to GMAC's motion for summary judgment included a copy of an affidavit from Taylor Evans, MBS' chief financial officer.  In his affidavit, Mr. Evans stated that "to the best of my information and belief, this document [the vehicle condition report] was not received by MBS at the time the Truck lease was terminated or at any time in 2002." Taylor Evans Aff. (1/30/2006) (docket no. 147-2). Mr. Evans further stated that "[a]t no time following Midway's taking possession of the Truck did MBS receive a notification regarding an odometer disclosure statement from Midway or GMAC." *Id.* Mr. Evan's affidavit, however, has been stricken from the record.  *See* Order to strike affidavit (8/30/06).  Even if the court considered Mr. Evan's affidavit, it would not change the court's resolution of this issue. Mr. Evan's

The odometer disclosure statement as set forth in the vehicle condition report advised MBS (the lessee) that federal law required it to disclose the truck's mileage to GMAC and that the failure to complete or providing false information may result in fines and/or imprisonment. The vehicle condition report was signed by an authorized representative of MBS. Based on this record, plaintiff has not demonstrated that GMAC failed to notify MBS as required by 49 C.F.R. § 580.7(a).

### B.    GMAC obtained a mileage disclosure from the lessee

Next, plaintiff contends that GMAC (the lessor) failed to obtain a mileage disclosure from MBS (the lessee), but relied on Midway to obtain the disclosure required under the regulations. Plaintiff's Supplemental Brief at 1-2. As the court previously discussed, GMAC leased the truck under the terms of a dealer agreement with Midway. The agreement set forth the following procedure for the return of leased vehicles:

> If the Vehicle is not purchased by either the Lessee [MBS] or Dealer [Midway], Dealer [Midway] agrees to (1) receive and inspect the Vehicle returned from Lease, (2) complete a vehicle condition report, supplied by GMAC, in the presence of the Lessee and (3) obtain the Lessee's signature on the report acknowledging the condition of the Vehicle. For each vehicle condition report Dealer completes, GMAC shall pay Dealer $25. If the Dealer-prepared vehicle condition report does not exclude excessive wear and use or excess mileage that a reasonable inspection would have discovered, Dealer shall be responsible for the first $250 of such excessive wear and use or excess mileage.
>
> Dealer will, at GMAC's option, provide GMAC safe storage of returned Vehicles at no charge for a period not to exceed 30 days. Dealer is not required to

---

statement that MBS did not receive the vehicle condition report at the termination of the lease is based upon his "information and belief" rather than his personal knowledge. "[S]tatements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). *See* Fed. Rules Civ. Proc. 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

provide primary insurance coverage on stored Vehicles.  If, however, a Vehicle is damaged while in the possession of Dealer, Dealer is required to document the facts relating to the damage.  If an employee of Dealer is responsible for the damage, Dealer is required to file a claim under Dealer's garage-keeper's legal liability insurance policy.

Dealer Agreement at ¶ V.

Finally, the dealer agreement stated that Midway is not GMAC's agent:

A.    Dealer Is Not Made Agent of Representative of GMAC -- This Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.  Neither party owes the other any fiduciary duty.

B.    Dealer's participation in the GMAC Lease Plan is at Dealer's sole election, and GMAC and Dealer acknowledge that Dealer is free to engage in leasing transactions with the financial institution of Dealer's choice.

*Id.* at ¶ VII.A.

Under the dealer agreement, GMAC paid Midway $25.00 to complete the vehicle inspection report, which included completion of the mileage disclosure. Plaintiff has not identified any statute or regulation that prohibits GMAC from hiring a third-party to complete the mileage disclosure statement on a leased vehicle.  In this regard, the court notes that the regulations appear to place the burden on the lessee to provide this information to the lessor. *See* 49 C.F.R. § 580.7(b) ("In connection with the transfer of ownership of the leased motor vehicle, the lessee shall furnish to the lessor a written statement regarding the mileage of the vehicle") (emphasis added). Accordingly, plaintiff has failed to demonstrate that GMAC violated any statute or regulation when it contracted with Midway to obtain the mileage disclosure from MBS.

11

### C.      Incomplete odometer disclosure statement

Finally, plaintiff contends that GMAC violated the Federal Odometer Act because the odometer disclosure statement as set forth in the vehicle condition form was incomplete. Section 32705(a)(2) provides that "[a] person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation." Here, the written odometer disclosure statement submitted by MBS (the lessee) violated the regulations because it omitted information required by the following sub-sections of  49 C.F.R. § 580.7: (1) the printed name of the person making the disclosure; (3) the date of the statement; (5) the lessor's name and current address; (7) the date that the lessor notified the lessee of disclosure requirements;  (8) the date that the completed disclosure statement was received by the lessor; and (9) the signature of the lessor.  The court agrees that GMAC violated § 32705(a)(2) when GMAC utilized an incomplete mileage disclosure statement in transferring ownership of the truck.

The question before the court is whether GMAC's violation of  § 32705(a)(2) results in civil liability under the Federal Odometer Act.  GMAC contends that it is not liable because it had no intent to defraud plaintiff.  The court agrees, and finds that GMAC has no liability under the Act.

Liability under the Federal Odometer Act requires an "intent to defraud."  *See* § 32710(a).  As the court stated in a previous opinion,

> The plain and ordinary meaning of the phrase 'intent to defraud' envisions misconduct more invidious than mere negligence. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807-08 (7th Cir. 1988) (construing predecessor statute).

Opinion (July 28, 2005).  While the facts in this case indicate that GMAC failed to complete the odometer disclosure statement as required by 49 C.F.R. § 580.7, there is no evidence that GMAC

acted with the intent to defraud plaintiff.  GMAC did not tamper with the odometer, and there is no

evidence it knew the odometer disclosure was false.  The vehicle condition report containing the

false mileage disclosure statement bears the signature of the lessee's authorized corporate

representative.  GMAC was entitled to rely on that statement.  While GMAC may well have been

negligent in failing to comply with all of the disclosure requirements, mere negligence is a standard

far less than reckless disregard, and is insufficient to establish the requisite intent to defraud under

the Federal Odometer Act.  *See  Dierson v. Chicago Car Exchange*, 110 F.3d 481, 488 (7th Cir.

1997) (dealer's violation of the Federal Odometer Act's disclosure requirements does not make

dealer civilly liable to the purchaser unless the dealer acted with intent to defraud); *Huson v. GMAC*,

108 F.3d 172, 173 (8th Cir. 1997) ("mere negligence in completing the required odometer statements

will not lead to liability" under the Federal Odometer Act); *Jones v. Hanley Dawson Cadillac

Company*,  848 F.2d 803, 806 (7th Cir. 1988) ("the mere fact that an automobile dealer has violated

the disclosure requirements of the Odometer Act does not necessarily mean that he is civilly liable.

The dealer must have acted with an 'intent to defraud' in order to be subject to liability from a

purchaser") (footnote omitted).

Viewing the evidence in the light most favorable to plaintiff, the court concludes that

GMAC's actions did not rise to a level of reckless disregard nor establish an intent to defraud as

required by the Federal Odometer Act.  Accordingly, GMAC's motion for summary judgment will

be granted as to Count I.

## IV.    The Ohio Odometer Act

In Count II, plaintiff alleges that GMAC violated the Ohio Odometer Act as set forth

in O.R.C. §§ 4549.42, 4549.45 and 4549.46.  First Amend. Compl. at ¶ 63.  Plaintiff claims that

GMAC did not make an accurate odometer disclosure when it transferred the truck.  These claims could fall within the conduct prohibited by O.R.C. § 4549.45(A) ("[s]ale of vehicle with tampered odometer") and O.R.C. § 4549.46(A)  ("[o]dometer disclosures").[3]  However, plaintiff does not allege facts to support a claim against GMAC for altering the odometer in violation of Ohio's tampering statute, O.R.C. § 4549.42(A).[4]

GMAC moves for summary judgment on the ground that it is not subject to the provisions of the Ohio Odometer Act.  The court agrees.  Federal jurisdiction in this suit is based upon plaintiff's claim under the Federal Odometer Act.  The court has supplemental jurisdiction over

---

[3] O.R.C. § 4549.45(A) provides in pertinent part that:

No person shall transfer a motor vehicle if the person knows or recklessly disregards facts indicating that the odometer of the motor vehicle has been changed, tampered with, or disconnected, or has been in any other manner nonfunctional, to reflect a lesser mileage or use, unless that person gives clear and unequivocal notice of the tampering or nonfunction or of the person's reasonable belief of tampering or nonfunction, to the transferee in writing prior to the transfer. In a prosecution for violation of this section, evidence that a transferor or the transferor's agent has changed, tampered with, disconnected, or failed to connect the odometer of the motor vehicle constitutes prima-facie evidence of knowledge of the odometer's altered condition.

O.R.C. § 4549.46(A) provides in pertinent part that:

No transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised Code. The transferor of a motor vehicle is not in violation of this division requiring a true odometer reading if the odometer reading is incorrect due to a previous owner's violation of any of the provisions contained in sections 4549.42 to 4549.46 of the Revised Code, unless the transferor knows of or recklessly disregards facts indicating the violation.

[4] O.R.C. § 4549.42(A), "Tampering with odometer; repairs," provides in pertinent part that:

No person shall adjust, alter, change, tamper with, advance, set back, disconnect, or fail to connect, an odometer of a motor vehicle, or cause any of the foregoing to occur to an odometer of a motor vehicle with the intent to alter the number of miles registered on the odometer.

plaintiff's state law claims pursuant to 28 U.S.C. § 1367. "A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules." *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir.1998). Because plaintiff filed his suit in Michigan, the court looks to Michigan's choice of law rules to determine whether Ohio law (i.e., the Ohio Odometer Act) applies.

In *Williams v. Toys "R" Us*, 138 Fed. Appx. 798 (6th Cir. 2005), the Sixth Circuit summarized Michigan's choice of law rule:

> Michigan's choice-of-law rule provides that there is a presumption that Michigan law applies to a case unless there is a rational reason to displace it. *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 562 N.W.2d 466, 471 (1997). The Michigan Supreme Court noted in *Sutherland*: "In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* Under this standard, Michigan courts will "use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 229 Mich.App. 580, 582 N.W.2d 866, 868 (1998).

*Williams*, 138 Fed. Appx. at 803.

At the first step of the choice of law analysis, the court must determine if a foreign state has an interest in having its law applied. This suit involves actions that occurred in both Ohio and Michigan. The vehicle was originally leased in Ohio by an Ohio resident (MBS). The lease was serviced by an automobile dealer in Ohio (Midway). Finally, the alleged fraudulent odometer disclosure was made in Ohio when MBS returned the truck to Midway upon the expiration of the lease. After reviewing plaintiff's allegations, along with the affidavits and other papers filed in this matter, the court concludes that Ohio has an interest in applying its law to this suit.

Assuming Ohio has an interest in having its law applied, at the second step of this analysis the court must determine whether Michigan's interests mandate that Michigan law be applied, or whether Michigan has "only a minimal interest" in this matter.   Plaintiff is a Michigan resident. Plaintiff acknowledges that the truck was sold three times in Michigan: GMAC sold the truck to a Michigan dealership (Sparta Chevrolet); Sparta Chevrolet sold the truck to another Michigan dealership (AAA Auto); and AAA Auto sold the truck to him.  *See* First Amend. Compl. As far as the transfer of ownership from GMAC is concerned, the State of Michigan issued the certificate of title from GMAC to Sparta Chevrolet.  *See* Certificate of Title attached to Amend. Compl. as Exh. A.  This certificate of title was subject to Michigan's odometer disclosure statute. *See* M.C.L. § 257.233a.  By contrast, the State of Ohio has never issued a title to this truck. Michigan has a vested interest in protecting the integrity of its system for transferring title to motor vehicles and insuring accurate odometer disclosures.  *Id.*

After reviewing plaintiff's allegations, along with the affidavits and other papers filed in this matter, the court concludes that Michigan has more than a "minimal interest" in this matter. Indeed, it appears that Michigan has a significant interest in applying its odometer disclosure statute to this suit.  While both Ohio and Michigan have an interest in this matter, the documented interest of Michigan is far greater.  The court concludes that Michigan law applies. Accordingly, plaintiff's Ohio Odometer Act claim asserted against GMAC will be dismissed for failing to state a cause of action.

16

### V.  Conclusion

For the reasons stated in this opinion, defendant GMAC's motion for summary judgment (docket no. 129) will be **GRANTED** and plaintiff's motion for partial summary judgment (docket no. 132) will be **DENIED**.  An order consistent with this opinion shall be issued forthwith.


Dated:  August 31, 2006                          /s/ Hugh W. Brenneman, Jr.
                                                Hugh W. Brenneman, Jr.
                                                United States Magistrate Judge

17